# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5725 | **DATE** | 9/27/2001 |
| **CASE TITLE** | Welch, et al vs. Agricultural Excess & Surplus | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 10/10/2001 at 2:30 P.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in this Court's Memorandum Opinion and Order, Plaintiffs' Motion for Summary Judgment is DENIED WITHOUT PREJUDICE, and Defendant's Motion for Summary Judgment is DENIED WITHOUT PREJUDICE. The case is set for status on October 10, 2001 at 2:30 p.m. to set a supplementary briefing schedule. (18-1,10-2)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 2 8 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |

| TP | courtroom deputy's initials | FOR DOCKETING 01 SEP 27 PM 4:37 | date mailed notice | |
|---|---|---|---|---|
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JOHN B. WELCH & ONE eCOMMERCE CORPORATION,

        Plaintiffs,

v.

AGRICULTURAL EXCESS & SURPLUS INSURANCE CO.

        Defendant.

No. 00 C 5725

HONORABLE JOHN A. NORDBERG

## MEMORANDUM OPINION AND ORDER

Plaintiffs John Welch and One eCommerce Corp. ("eCom") filed a two count complaint against their insurance carrier, Defendant Agricultural Excess and Surplus Insurance Co., seeking a declaration that a third party lawsuit triggered coverage under their directors and officer's liability policy, including the obligation to advance costs of defense (Count I), and damages for Defendant's allegedly vexatious and unreasonable failure to honor its obligation to provide coverage (Count II). Both sides have moved for summary judgment.

### FACTS

Only a brief recitation of the essentially undisputed facts is necessary to frame the parties' dispute. eCom came into existence in reverse-acquisition merger in March 1999. The directors/officers of eCom's predecessor entity became directors/officers of eCom at that time. Shortly thereafter, Defendant issued a Directors & Officers Liability Policy ("the Policy") to Plaintiffs covering wrongful acts by eCom's officers and directors. The policy period began in May 1999. The Policy contains several provisions which are the focus of the parties' claims.

> With the **Directors** or **Officers** of the **Company** that if, during the **Policy Period** or the **Discovery Period**, any **Claim** is made against the **Directors** or **Officers**,

DOCKETED
SEP 28 2001

individually or collectively, for a **Wrongful Act** the **Insurer** will pay on behalf of the **Directors** or **Officers** all **Loss** which the **Directors** or **Officers** shall be legally obligated to pay, except for such **Loss** which the **Company** actually pays as indemnification.

(*See* Complaint, Exhibit 1, Policy at Section I, ¶A).[1]

"**Loss**" shall mean damages, settlements, and **Costs of Defense** provided always, however, **Loss** shall not include criminal or civil fines or penalties imposed by law, punitive or exemplary damages or the two-thirds portion of any treble damage award, taxes, or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

(*See Id.* at Section III, ¶E).

"**Costs of Defense**" shall mean reasonable and necessary legal fees and expenses incurred in defense of any **Claim** and appeals therefrom, and cost of attachment or similar bonds; provided, however, **Costs of Defense** shall not include salaries, wages, overhead or benefit expenses associated with **Directors, Officers** or employees of the **Company**.

(*See Id.* at Section III, ¶F).

"**Wrongful Act**" shall mean any actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by the **Directors** or **Officers** in the discharge of their duties in their capacity as **Directors** or **Officers** of the **Company**, individually or collectively, or by virtue of their status as **Directors** or **Officers**.

(*See Id.* at Endorsement 11 at 2).

**Advancement of Costs of Defense**- For purposes of coverage provided under Insuring Agreements I.A. and/or I.B. and/or I.C., the **Insurer** shall advance **Costs of Defense** for any payments made on behalf of the **Directors** and **Officers** or the **Company** prior to the final disposition of any **Claim**. Any advancement shall only be on the condition that:

(1) the **Directors** and **Officers** and/or the **Company** provide a written undertaking satisfactory to the **Insurer** providing that in the event it is finally established that the **Insurer** has no liability under this Policy to the **Directors** and **Officers**, or any of them, and /or the **Company** for such **Claim**, such **Directors** and **Officers** and/or the **Company** agree to repay the **Insurer** upon demand all **Cost of Defense** advanced on their behalf by virtue of this provision;

---

[1]Similar provisions protect eCom. *See Id.* at Section I, ¶B and Endorsement 12(securities claims).

(2) any **Costs of Defense** advanced by the **Insurer** shall serve to reduce the **Limit of Liability** for such **Claim** to the extent they are not in fact repaid to the **Insurer** in accordance with (1) herein above;

(3) the appropriate retention has been satisfied; and

(4) the **Company**, **Directors** and **Officers**, and the **Insurer** have agreed upon the portion of **Costs of Defense** attributable to covered claims against the **Directors** and/or **Officers** and/or the **Company**.

(*See Id.* at Endorsement 10).

The Insurer shall not be liable to make any payments for **Loss** in connection with any Claim made against the **Directors** or **Officers**:...

L. by any security holder of the **Company** whether directly or derivatively unless such securities holder bringing such **Claim** is acting totally independent of, and totally without the solicitation of, or assistance of, or participation of, or intervention of, any **Director** or **Officer**, or the **Company**, or any affiliate of the **Company**.

(*Id.* at Section IV, ¶ L)("insured versus insured exclusion").

In September 1999, shareholders of eCom filed a complaint in the Southern District of New York alleging securities fraud, breach of contract, and common law fraud against various defendants, including eCom and directors/officers of eCom (including Plaintiff Welch) ("the securities litigation"). (*See* Complaint, Exhibit 3, Securities Litigation Complaint). The securities litigation complaint includes the following two general allegations:

62. Upon information and belief, because plaintiffs[2] would and did gain materially from plaintiffs' investment and were controlling officers, directors, and shareholders of One E, they had motive and opportunity to make false and misleading statements. This creates a strong inference of fraudulent intent.

97. Upon information and belief, Welch, Lozano, Carolan, and Rothschild by virtue of their offices with One E, exercised their power and influence to cause One E to engage in the illegal conduct and practices complained of herein. As a result, at the time of the wrongs alleged herein, they were controlling persons of One E within the meaning of Section 20(a) of the Exchange Act and Section 15 of the Securities Act.

---

[2]This appears to be a typo and should likely read "defendants."

3

(Id. at ¶¶ 62, 97). As the plaintiffs in the case allege fraud, their pleadings are fairly detailed, as required by F.R.C.P. Rule 9. The bulk of the specific allegations, which describe the alleged fraud in some detail, largely focuses on alleged misrepresentations that occurred before eCom was formed, notably in the marketing of the transaction that would ultimately create eCom. The complaint also alleges misconduct – such as the diversion of funds for purposes other than those represented - that occurred after eCom was formed. In essence, the misrepresentations were largely made before eCom was formed and the bad acts (which made the prior representations misrepresentations) largely occurred after eCom was formed.

Plaintiffs have moved for summary judgment on Count I, claiming that the general allegations in the securities litigation complaint unambiguously show that coverage under the Policy has been triggered. Defendant has moved for summary judgment on both counts, claiming that the alleged wrongdoing in the securities litigation is not covered by the Policy and/or that the "insured versus insured" exclusion applies. Defendant further argues that if the denial of coverage was warranted under the Policy, Defendant's actions in denying coverage could not have been vexatious and unreasonable.

## DISCUSSION

The parties' dispute focuses on two issues. The first is how to interpret the complaint in the securities litigation vis a vis the Policy provisions. The second is whether the "insured versus insured" exclusion applies because of alleged assistance provided by eCom directors/officers to the plaintiffs in the securities litigation.

## A. Legal Standards

Under Rule 56 of the Federal Rules of Civil Procedure, the Court may grant summary judgment only if the factual record shows that no genuine issue of material fact exists and the movant is therefore entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Bratton v. Roadway Package System, Inc.*, 77 F.3d 168, 173 (7th Cir. 1996). The movant bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Hudson Insurance Co. v. City of Chicago Heights*, 48 F.3d 234, 237 (7th Cir. 1995). If the moving party meets this burden, the nonmovant must reply by setting forth specific facts demonstrating the existence of a genuine issue for trial. FED. R. CIV. P. 56(e); *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir.1995). In evaluating the motion, the court must draw all reasonable inferences from the record in the light most favorable to the nonmoving party. *Hamm v. Runyon*, 51 F.3d 721, 724 (7th Cir. 1995). The central inquiry is whether the evidence is so one-sided that no reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

"Under Illinois law, construction of an insurance contract is a question of law, suitable for disposition by a court on a motion for summary judgment." *T.H.E. Insurance Co. v. City of Alton*, 227 F.3d 802, 805 (7th Cir. 2000). If a policy provision is clearly worded and unambiguous, its language will be interpreted in "its 'plain, ordinary and popular sense.'" *Travelers Insurance Companies v. Penda Corp.*, 974 F.2d 823, 828 (7th Cir. 1992). However, all doubts and ambiguities are to be resolved in the favor of the insured. *Id. See also Forum Insurance Co. v. Ranger Insurance Co.*, 711 F.Supp. 909, 911(N.D. Ill. 1989)("Any doubts over coverage must be resolved in favor of the insured"); *Cincinnati Insurance Co. v. West American*

5

*Insurance Co.*, 112 F.Supp.2d 718, 721 (C.D. Ill. 2000)(exclusionary clause will exclude coverage only if its applicability is clear). If a complaint against the insured makes allegations that (when construed generously) fall within, or arguably fall within, the coverage of the policy, the insurance carrier must provide a defense. *Roman Catholic Diocese of Springfield v. Maryland Casualty Co.*, 139 F.3d 561, 565 (7th Cir. 1998)(all doubts resolved in favor of the insured); *Forum*, 711 F.Supp. at 911 ("obligation to defend is broader than obligation to indemnify"). To ascertain if a defense is owed to the insured, the court simply compares the allegations in the complaint to the relevant provisions of the policy. *Roman Catholic*, 139 F.3d at 565. Moreover, that all the injures alleged in the complaint may not be covered does not eliminate the duty to defend; "so long as at least some injuries potentially fall within the scope of the policy, the insurer must defend the insured." *Id.*

## B.  Policy Coverage

Defendant maintains that the gravamen of the securities litigation complaint involves misrepresentations made to persuade investors to invest in eCom before eCom was created. Defendant argues that all such representations were made by predecessor entities and the officers/directors of those predecessor entities(who would only later become officers/directors of eCom). Defendant concludes that because Defendant did not agree to insure any of the predecessor entities or their officers/directors, there can be no coverage under the Policy. Defendant maintains that the general allegations against the officers/directors of eCom as officers and directors of eCom, which would implicate coverage under the Policy, should be disregarded. Instead, Defendant maintains that the court should focus on the specific allegations, which focus exclusively on allegedly wrongful conduct which occurred before eCom came into existence. In

essence, Defendant asks the court to use the specific allegations to rewrite the general allegations to claim the Plaintiffs committed the alleged wrongful acts so that they could profit as "future" (rather than present) directors/officers of eCom. The Plaintiffs ask the opposite. They assert that the court can focus on the general allegations, which implicate Policy coverage by asserting wrongdoing by officers/directors of eCom as officers/directors of eCom, and end our inquiry there. In addition, Plaintiffs assert that the securities litigation complaint alleges wrongful action which occurred after eCom was formed. To the latter, Defendant responds that any alleged wrongful conduct which occurred subsequent to eCom's creation is irrelevant, as there is nothing in the Policy to indicate an intent to provide coverage for wrongful acts that were not committed by officers/directors wholly in their capacity as officers/directors of eCom.

As a preliminary matter, Defendant notes that the Policy does not include a duty to provide a defense. (*See* Policy at Section VI,¶B). Therefore, Defendant maintains that the cases addressing an insurer's duty to provide a defense are irrelevant and only the duty to indemnify, with its higher standard, is implicated by this case. While the court agrees that the duty to defend cases are not directly controlling, they do appear to be instructive in interpreting the obligation to advance costs of litigation. In that provision, the Defendant seems to have explicitly assumed a broader obligation than mere indemnification. This is evidenced by the two factors. First, the provision explicitly requires the insureds to agree to reimburse the Defendant if it turns out that the Defendant has no liability under the Policy. Thus, the Defendant explicitly anticipated in the insurance contract that Defendant may be advancing the costs of defense in cases where it is

7

ultimately shown that Defendant has no liability.[3] Second, the very nature of an advance of litigation costs accepts the contingency that liability may or may not be found. Thus, the duty of defense cases appear applicable in ascertaining the potential scope of the clause, especially in light of the requirement of construing any ambiguity of the provisions of the policy against the insurer.

While the matter is a close one, the court must conclude that the Plaintiffs have the better argument. First, all doubts and ambiguities must be resolved against the insurer. Second, the duty to defend cases counsel that a court should compare the allegations in the complaint to the coverage provisions of the policy. *See, e.g., Roman Catholic*, 139 F.3d at 565. The securities litigation complaint explicitly alleges the directors/officers of eCom engaged in wrongful conduct, which appears to fall squarely in the scope of the Policy's coverage. Third, that the general allegations might be mispled due to confusion regarding chronology or corporate formalities is irrelevant. "[T]he insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent...." *Travelers*, 974 F.2d at 827. Moreover, the securities litigation plaintiffs may well have intended to raise claims beyond those which Defendant believes are being raised; while F.R.C.P. Rule 9 requires particularity in pleading fraud, it does not require an encyclopedic recounting of all a party's evidence be presented in the complaint. Fourth, there are allegations in the securities litigation complaint that appear to challenge conduct which occurred after eCom was formed, notably regarding subsequent securities purchases, violation of the continuing duty to disclose, and wrongful transactions *(See, e.g.,* Complaint, Exhibit 3,

---

[3]Also consistent with the duty to defend cases, the Policy appears to envision circumstances where costs of defense would be advanced in cases where only part of the claimed wrongs were covered. *(See* Policy at Endorsement 10.)

Securities Litigation Complaint at ¶¶ 8,12, 15, 22, 47, 67, 74, 81, 84, 87).[4]  As to subsequent

conduct, Defendant's argument that it is not obligated to provide coverage for wrongful acts

unless they were committed by officers/directors of eCom wholly in their capacity as

officers/directors of eCom appears to be contradicted by a modification presented in the one of

the  Policy's endorsements.  In the original policy, the definition of  "Wrongful Act" is restricted

to actions by officers and directors "solely in their capacity as **Directors** or **Officers** of the

**Company**...." (Policy at Section III, ¶D).  In the subsequent endorsement, the word "solely" is

omitted.  (*Id.* at Endorsement 10, page 2).  Therefore, given our obligation to construe the policy

against the insurer, the Policy appears to have been amended  in a manner that excludes

Defendant's interpretation.

However, while it appears that Plaintiffs may have established coverage under the Policy

(as regards potential advancement of costs of defense), it does not appear that they have proven

that they satisfied (to the extent possible) the conditions listed in Endorsement 10, including the

requirement of providing a written promise to reimburse Defendant.  Nothing in Plaintiffs' Local

Rule 56 Statement appears to deal with the required conditions for advancing the costs of

defense.  Therefore, Plaintiffs are not entitled, on the current record, to summary judgment.

## C.  Insured versus Insured Exclusion

Defendant also maintains that the "insured versus insured" exclusion applies.  Defendant

notes that the complaint in the securities litigation specifically alleges that the plaintiffs in that

---

[4]Defendant correctly notes that the subsequent stock purchases were allegedly based on the "same misrepresentations."  *See* Securities Litigation Complaint at ¶ 89.  However, given our obligation to construe the complaint generously, this allegation falls short of establishing the purchase was based upon the same misrepresentations delivered at the same time in the same manner.

action learned of the alleged wrongdoing in discussions with and information provided by past and present officers and directors of eCom. (*See* Complaint, Exhibit 3, Securities Litigation Complaint at page 1 and ¶¶ 61, 65, 72, 77, 79, 83). Defendant maintains that, given the incriminating nature of the information, it could not have been provided innocently.

There is a fundamental flaw in Defendant's argument on this issue – Defendant presumes the court will treat *allegations* in the securities litigation complaint as facts established by undisputed evidence in this case. Defendant has presented no evidence (e.g., deposition excerpts or affidavits from the officers/directors) that those allegations in the securities litigation are true or that the specific assistance provided by the officers and directors was of a nature that triggered the exclusion. *Contrast Bernstein v. Genesis Insurance Co.*, 90 F.Supp.2d 932, 938 (N.D. Ill. 2000)(details regarding involvement). While *interpreting* an insurance contract is a question of law for the court, a party is still required to establish the undisputed facts which show a policy provision applies to prevail on summary judgment. Therefore, on the current record, Defendant is not entitled to summary judgment on this issue.

In sum, this the truly rare case where neither side has established an entitlement to summary judgment, but either side may potentially cure the defects in their presentation with a supplementary pleading. As such, to potentially resolve the case as expeditiously as possible, supplementary pleading will be addressed at the next status.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Summary Judgment is DENIED WITHOUT PREJUDICE, and Defendant's Motion for Summary Judgment is DENIED WITHOUT PREJUDICE. The case is set for status on October 10, 2001 at 2:30 p.m. to set a supplementary briefing schedule.

ENTER:

JOHN A. NORDBERG
Senior United States District Judge

DATED: 9/27/01